Lee JAQUA, Plaintiff,

v.

FURR'S/BISHOP'S CAFETERIAS, L.P., et al., Defendants.

CIV. A. No. 96–2092–EEO.

United States District Court, D. Kansas.

Oct. 17, 1997.

John B. Gage, II, The Gage Law Firm, P.C., Overland Park, KS, for Plaintiff.

Lawrence D. Greenbaum, McAnany, Van Cleave & Phillips, P.A.,Kansas City, KS, Michael D. Plachy, Michael D. Nosler, Rothgerber, Appel, Powers & Johnson, Denver, CO, for Cafeteria Operators, L.P.

## MEMORANDUM AND ORDER

RUSHFELT, United States Magistrate Judge.

The court has before it two motions: Defendant's Motion to Serve Additional Expert Witness Designation Out of Time (doc. 65); and a Motion for Reconsideration (doc. 70), filed by plaintiff. Both motions address the extent to which defendant should be allowed to designate a psychiatrist or a psychologist as an expert witness about the condition of plaintiff.

Pursuant to earlier motions of both plaintiff and defendant, the court entered a revised scheduling order on July 7, 1997 (doc. 51). It extended the deadlines to July 15 and August 15, 1997, respectively for plaintiff and defendant to designate expert witnesses and provide the information required by Fed. R.Civ.P. 26(a)(2). At the request of defendant, plaintiff agreed to submit himself on August 13, 1997, for a psychiatric examination by Dr. Patrick L. Hughes, M.D. His agreement mooted the need for a motion, pursuant to Rule 35.

To comply with the revised scheduling order, defendant on August 15 filed its designation of Dr. Hughes as an expert witness. It stated that a written report of his opinions would be submitted by August 22, 1997. Simultaneously defendant filed a motion to extend to the latter date its deadline for expert witnesses. Assuming that defendant would designate only Dr. Hughes, and no psychologist, plaintiff agreed to the extension. By letter of August 4, 1997, an attorney for defendant had assured opposing counsel that plaintiff would undergo no psychological tests during the examination by Hughes on August 13, 1997, that it "will consist exclusively of an oral interview." (Memo. in Supp. of Mot. for Recons., Mot. in Limine & Mot. to Strike Expert Witness Designation, doc. 71, Ex. C.)

On August 22, 1997, defendant submitted to plaintiff the report by Dr. Hughes of his examination of August 13. On August 25, 1997, the court entered its Order (doc. 67), sustaining the motion to extend of the deadline for the designation, upon the representation by defendant that it was unopposed. The present motion by plaintiff for reconsideration addresses that ruling. Plaintiff asks the court upon reconsideration to withdraw the order of extension and strike the designation of Dr. Hughes as an expert witness. Plaintiff contends that defendant breached their agreement for a psychiatric examination; inasmuch as Dr. Hughes retained a psychologist, Denis J. Carville.

The report of Dr. Hughes describes his own examination of the plaintiff and a review of various documents provided to the doctor. They include psychological test results reported by Daniel Claiborn, the psychologist designated as an expert witness by plaintiff. Dr. Hughes in his report then explains the engagement of Dr. Carville as follows:

My psychiatrist' review of the July, 1997 psychological test results leads me to believe that *in fact* the psychological testing results were *not* valid. In keeping with my normal, daily clinical practice when reviewing psychological test results/interpretations, I consulted Dr. Denis Carville, a Ph.D. Psychology colleague, and requested his review of the psychological test results. He confirmed my opinions that the test results were invalid, showed florid examination in answering question about psychological distress, and tabulated results consistent with multiple psychiatric illnesses that have no possibility of existing within the same person, being caused by any job termination process, nor being consistent with post-traumatic stress disorder, major depression, or adjustment disorder. Please see Dr. Carville's letter to me for further details (appended to this letter). Thus, review of Mr. Jaqua's July, 1997 psychological test results by another, Ph.D. Psychologist with specialty expertise in interpreting psychological test results, seems warranted, to confirm or refute my opinion about the validity of those self-report psychological tests.

(*Id.*, Ex. D.)

Plaintiff zealously argues that Dr. Hughes submitted him to psychological tests by Dr.

Carville and thus broke the agreement of the parties that the psychiatric examination would include no such testing. After reading and re-reading the report of Dr. Hughes, however, the court finds nothing to confirm that either he or Carville conducted any psychological testing of plaintiff. The second paragraph of the report identifies a " 'second opinion' psychological test review by Denis Carville, Ph.D," as one of the documents Dr. Hughes "reviewed." Paragraph e. on page 5 of the report clarifies, however, that the review by Dr. Carville relates only to his study of the psychological test results obtained in July 1997 by Dr. Claiborn, the psychologist designated by plaintiff. The report of Dr. Hughes contains nothing from which the court can find that either Dr. Hughes or Dr. Carville themselves conducted any psychological testing. They merely reviewed and disagreed with the findings of Dr. Claiborn. The report of Dr. Hughes clearly states, moreover, that he himself "performed a complete psychiatric evaluation" of plaintiff and that he reviewed the records of others. The records of others include the review by Dr. Carville of the test results obtained by Dr. Claiborn.

In its memoranda defendant specifically states that Dr. Carville *did not participate in the IME.*" (Def.'s Resp. to Mot. for Recons., doc. 78.) Defendant also represents that it provided plaintiff on August 22 with "all defendant's expert disclosure information on both Drs. Hughes and Carville." (Def.'s Reply to Pl.'s Objection to Mot. to Serve Additional Expert Witness Designation Out of Time, doc. 80, p. 4.) Defendant has attached a copy of the report of Dr. Carville to its response to the motion for reconsideration.(Def.'s Resp. to Mot. for Recons., doc. 78, Attach. A.) It describes a comprehensive review of a report by Dr. Claiborn. The court does not find from this, however, that Dr. Carville himself conducted testing of plaintiff. Plaintiff has shown nothing factual to the contrary. If Dr. Carville indeed conducted his own psychological tests, plaintiff could very clearly have shown that to be the fact, if necessary by his own affidavit.

The motions before the court call for an application of the Federal Rules of Civil Procedure, the District of Kansas Rules, the previous orders of the court, and a good dose of common sense. For the reasons already stated, the court does not find that defendant has broken any agreement as to how it was to obtain a psychiatric examination of the plaintiff. Reviewing the psychological tests obtained by someone else does not equate with performing one's own, additional tests. Had plaintiff not agreed to a psychiatric examination, the court would probably have allowed it pursuant to Rule 35, with or without psychological testing as an incident. The court can find from its own experience that examining psychiatrists often refer the examined person to psychologists for psychological testing. Such testing often occurs as an incident to an examination allowed under Rule 35. Experts in many fields rely upon other experts for assistance, incidental to the preparation of expert opinions and testimony. Physicians rely upon X-ray technicians. Chemists rely upon laboratory technicians. Accident reconstructionists rely upon statistics and evidence obtained by investigators. And psychiatrists rely upon psychologists. The court knows of no reason why it would not have allowed a psychiatric examination by defendant, pursuant to Rule 35, to include such additional testing, had it been requested.

The court would probably have allowed defendant a psychiatric examination, furthermore, even after the time for other discovery had passed. D.Kan. Rule 35.1 specifically provides that, "Pursuant to Fed.R.Civ.P. 35 the physical or mental examination of a party may be ordered at any time prior to trial." The court notes that the deadline of August 22 for defendant to provide the information required by Rule 26(a)(2) for expert witnesses of defendant leaves plaintiff with ample opportunity to seek additional discovery, if necessary, with respect to the proposed expert testimony. This case has not yet proceeded to final pretrial conference. The court has set it on a trial docket to begin December 1, 1997. Plaintiff has demonstrated no prejudice of any consequence. His primary complaint appears directed instead at defendant for a supposed breach of an agreement about the scope of a psychiatric examination.

 

The Rules do not preclude a party from designating as an expert witness, furthermore, someone who has done no more than review the records and opinions of an opposing expert. Defendant could have done that, independent of Rule 35 or of any agreement with plaintiff. Whether or not defendant ever sought its own psychiatric examination of plaintiff, it could have merely submitted the report of Dr. Claiborn to another psychologist for review and opinion. It could then have designated such psychologist as an expert witness.

The court further notes that defendant has committed itself to calling Dr. Carville as an expert witness only if necessary as a foundation to the expert testimony of Dr. Hughes. The court inclines to agree with the proposition, expressed by defendant, that F.R.E. 703 would not require the testimony of Dr. Carville as a foundation or prerequisite to the expert testimony of Dr. Hughes. The report of Dr. Carville appears to be merely corroborative of part of the opinion already formed by Dr. Hughes. If so, it would hardly be a prerequisite to the expert testimony of Hughes. By this order, however, the court makes no such ruling upon these evidentiary issues. Those decisions belong to the trial judge. With the understanding that defendant will call Dr. Carville as an expert witness only if necessary to establish foundation for the expert testimony of Dr. Hughes, the court will sustain the motion of the defendant to designate the psychologist as an expert witness.

Plaintiff asks that the motion of defendant be overruled for failure to show excusable neglect within the meaning of F.R. Civ. P. 6(b)(2) and D. Kan. Rule 6.1. In this instance defendant apparently agreed to defer its psychiatric examination until August 13 to accommodate the travel schedule of the plaintiff, who resides in New Mexico. Defendant did not then realize that Dr. Hughes would ask Dr. Carville to review the psychological tests conducted by Dr. Claiborn. The court will treat the failure to ascertain this fact in advance of August 15 as excusable neglect. Particularly under the circumstances of timing for the examination against the pending deadline for the report, the court can find no fairness in applying a rigid denial against the extension.

For all the foregoing reasons the court sustains Defendant's Motion to Serve Additional Expert Witness Designation Out of Time (doc. 65) and overrules the Motion for Reconsideration (doc. 70).

IT IS SO ORDERED.